IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| CAROLINA VOLPE, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No.: 4:15-cv-01119 |
| ADVANCE AMERICA, CASH ADVANCE CENTERS OF MISSOURI, INC. d/b/a Advance America, Cash Advance Centers, d/b/a Advance America (a Delaware Corporation) | ) ) ) ) ) ) ) | **JURY TRIAL DEMANDED** |
| Defendant. | ) ) | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION OF DEFENDANT'S MOTION TO STAY LITIGATION AND COMPEL INDIVIDUAL ARBITRATION**

Plaintiff, Carolina Volpe, by and through undersigned counsel, hereby files this Memorandum in Opposition of Defendant's Motion to Stay Litigation and Compel Individual Arbitration.

I.  **SUMMARY OF ARGUMENT**

The Supreme Court and the Federal Arbitration Act mandates that this arbitration provision be deemed unenforceable. When an arbitration provision is challenged directly in a petition, the trial court, not an arbiter, is the proper venue to decide whether or not the provision is enforceable. Here, the arbitration provision has been directly challenged in the petition.

Moreover, when an arbitration provision acts as a contract of adhesion, contains fine print, and creates unequal bargaining power it will be found unconscionable and unenforceable.

The arbitration provision at issue here is unconscionable and unenforceable because it is a contract of adhesion containing fine print and creating a valley of unequal bargaining power.

## II.     BACKGROUND

On June 17, 2015, Ms. Volpe filed her putative class action Petition in the Circuit Court of St. Louis County, Missouri. Ms. Volpe's Petition alleges that Defendant violated, inter alia, the Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.10 *et seq.* and Mo. Rev. Stat. § 408.500 *et seq.* (Pet. ¶¶ 82, 105). On July 20, 2015, this action was timely removed to this Court. Defendant filed its Motion to Stay Litigation and Compel Individual Arbitration and simultaneously filed its Memorandum in Support of Its Motion to Stay Litigation and Compel Individual Arbitration on July 25, 2015. Doc. #9.

Ms. Volpe has been trapped in a cycle of debt with Defendant since approximately August 2009. Petition ¶ 3. This cycle has been facilitated by Defendant's policies, many of which violate Missouri law, as described more fully herein. Petition ¶ 3. Ms. Volpe was charged an interest rate that exceeded the Missouri Interest Rate Cap and was prohibited by Defendant from obtaining the "principal reduction renewals" that she was entitled to under Missouri law. Petition ¶ 4. Ms. Volpe initially borrowed money from Defendant in approximately August of 2009. Petition ¶ 5. She entered into several transactions thereafter. Each transaction was purportedly governed by nearly identically worded Consumer Loan Agreements ("Loan Agreement"). (Pet. Exs. 1, 2).

Ms. Volpe was unable to escape the cycle of debt perpetuated by Defendant. Petition ¶ 7. In fact, Defendant renewed her loan at least twenty (20) times, in violation of Missouri law. Id. As a result of this cycle of debt, Ms. Volpe was routinely placed in high-pressure situations regarding the renewal of her loan(s). Ms. Volpe was ultimately forced to sign Loan Agreements

with Terms and Conditions that contained, inter alia, an Arbitration Provision. The Arbitration Provision attempts to compel individual arbitration as the mandatory forum for claims arising from or relating in any way to the Loan Agreement. (Pet. Ex. 3). The Arbitration Provision also attempts to bar any and all class action claims and further attempts to limit Ms. Volpe's ability to serve as a class representative in a class action. Id. ¶ 3. The contract states: "all disputes including any Representative Claims against us (Defendant) and/or related third parties shall be resolved by binding arbitration only on an individual basis with you (Ms. Volpe)." Id. (parentheses added).

Ms. Volpe's Petition alleged that Defendant's arbitration provision is unconscionable, against Missouri public policy, and unenforceable against her and the proposed Class. (Pet. ¶ 53). Procedural and substantive unconscionability are factual issues to be determined by this Court by weighing the evidence. (Pet. ¶ 59). Defendant possesses bargaining strength and power that is far superior to that of Ms. Volpe and its other customers. (Pet. ¶ 62). Without discussion or negotiation, Defendant requires its customers to sign standardized form arbitration provisions, drafted by Defendant. Id. Defendant's standard arbitration provisions are mini-contracts of adhesion because it is offered on a take-it-or-leave-it basis and the customer is required to adhere to the arbitration provision in no matter the circumstances. Id. Defendant's arbitration provision effectively insulates Defendant from any meaningful threat of private enforcement of payday regulations. (Pet. ¶ 74). Enforcing a provision which would prohibit class arbitration and class actions is against public policy, especially in a situation in which doing so would make it unlikely that consumers would be able to vindicate their rights under Missouri law. (Pet. ¶ 76).

### III.     ARGUMENT

#### A. Arbitration Should be Decided by This Court Because Ms. Volpe's Petition Directly Challenges the Validity of the Arbitration Provision.

Missouri contract law applies in scrutinizing this arbitration provision. Under the Federal Arbitration Act ("FAA"), arbitration provisions are enforceable "save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C.A § 2. State law, whether of legislative or judicial origin, is applicable *if* that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally. Perry v. Thomas, 482 U.S. 483, 492 (1987) (emphasis added). In determining whether an arbitration provision is valid under the FAA, Missouri courts are guided by the United States Supreme Court's decision in AT&T Mobility LLC v. Concepcion, 131 S. Ct. 1740, 1746, 1750 (2011) as interpreted and applied by Brewer v. Missouri Title Loans, 364 S.W.3d 486 *(Mo. banc 2012)*, and Robinson v. Title Lenders, Inc., 364 S.W.3d 505 (Mo. banc 2012). It should be noted that opposing counsel does not mention these decisions in the entirety of their brief. The FAA does not automatically favor or disfavor arbitration, it relies on State law to decide.  Concepcion requires state courts to apply state law defenses to contracts containing arbitration provisions and should be tested through a lens of ordinary state law principles. Brewer, 364 S.W.3d at 492. Consideration is given to whether the arbitration agreement is improper in light of generally applicable contract defenses. Robinson, 364 S.W.3d at 515. This means that a trial court can declare an arbitration agreement unenforceable if a generally applicable state contract defense, such as fraud, duress, or unconscionability, applies. Eaton v. CMH Homes, Inc., 461 S.W.3d 426, 432 (Mo. 2015).

Unconscionability in Missouri is defined as "'an inequality so strong, gross, and manifest that it must be impossible to state it to one with common sense without producing an exclamation at the inequality of it.'" State of Missouri, Dept. Soc. Servs., Div. of Aging v. Brookside Nursing Ctr., Inc., 50 S.W.3d 273, 277 (Mo. banc 2001) *(quoting Restatement (Second) of Contracts § 153 (1981))*. The unconscionability doctrine guards against one-sided

4

contracts, oppression, and unfair surprise. Brewer, 364 S.W.3d at 492-93. Unconscionable contracts or clauses will not be enforced. State ex rel. Vincent v. Schneider, 194 S.W.3d 853, 858 (Mo. banc 2006).

Unconscionability can occur at any part of the contract formation. Oppression and unfair surprise can occur during the bargaining process or may become evident later, when a dispute or other circumstances invoke the objectively unreasonable terms. Brewer, 364 S.W.3d at 493. The unconscionability of a contract is inextricably linked with the process of contract formation because it is *at* formation that a party is required to agree to the objectively unreasonable terms of the agreement. Id. at 493.

Missouri law traditionally required a court to look at two elements relating to unconscionability: (1) Procedural and (2) Substantive unconscionability. Whitney v. Alltel Communications, 173 S.W. 3d 309 (Mo. App. W.D. 2005). Procedural unconscionability involves the contract formation itself, including pressure by one of the parties, fine print, bargaining position, and misrepresentation. Funding Sys. Leasing Corp. v. King Louie Int'l, Inc., 597 S.W.2d 624, 634 (Mo. Ct. App. 1979). Substantive unconscionability, on the other hand, refers to an "undue harshness" in the contract terms themselves. Id. The Missouri Supreme Court, in Brewer, has refined this traditional approach. The Brewer court noted that it is inaccurate to suggest that an arbitration provision must be separately found to be both procedurally and substantively unconscionable to be invalid. Brewer, 364 S.W.3d at 492. It is more accurate to state that a court will look at both the procedural and substantive aspects of a contract to determine whether, considered together, they make the provision in question unconscionable. Eaton, 461 S.W.3d 432 (Mo. 2015). Brewer identified some of the common factors that bear on unconscionability, including, but not limited to: high pressure sales tactics,

5

unreadable fine print, misrepresentation or unequal bargaining positions. Id. Courts also consider whether the terms of an arbitration provision are unduly harsh or deny the plaintiff of a remedy. Id. This is a fact-specific inquiry focusing on whether the contract terms are so one-sided as to oppress or unfairly surprise an innocent party or which reflect an overall imbalance in the rights and obligations imposed by the contract at issue. Id.

Missouri courts have consistently found arbitration provisions containing class waivers invalid based on general state law principles of unconscionability. In Brewer, the terms of the provision were extremely one-sided as their complicated nature required the expertise of an attorney, while providing no incentive to hire one with the with the small amount of damages at issue. Brewer, 364 S.W.3d at 494. Likewise, in Greene, an arbitration provision was found unenforceable where the nature of the provision lacked mutuality. Greene v. Alliance Auto., Inc., 435 S.W.3d 646, 650 (Mo. Ct. App. 2014).  In Greene the provision itself allowed the defendant to unilaterally divest itself of the promise to arbitrate.  Id. Similarly, in Lopez the Court found an arbitration provision unconscionable where it was non-negotiable, difficult to understand, and so extremely one-sided that a title company refused to pay the costs of arbitration or attorney's fees for the consumer. Lopez v. H & R Block, Inc., 429 S.W.3d 497, 502 (Mo. Ct. App. 2014).  In Lopez, even if the consumer won, and could seek to recover attorney's fees, there was a lack of available counsel to pursue individual claims. Id. Further, the provision bound the consumer alone to individual arbitration for all claims against the company while simultaneously reserving the company's right to obtain its primary remedies through the court system. Id. at 493-95.

Overall, Missouri courts reject one sided arbitration provisions that force the terms of a contract on unknowing consumers while the lender's feet lay comfortably on its home turf. These provisions are deemed unconscionable and therefore unenforceable.

6

### C. Defendant's Waiver of Jury Trial and Arbitration Provision is Unconscionable Under Missouri Law.

1. <u>The terms of Defendant's arbitration provision are so grossly one-sided as to be unconscionable.</u>

Unconscionability is associated unconditionally with contract formation because it is at formation that a party is obligated to agree to the objectively unreasonable terms. <u>Brewer</u>, 364 S.W.3d at 493. A company has superior bargaining power when it forces a consumer to arbitrate but reserves the right to discard arbitration in favor of litigation when the company's interests are at issue. <u>Id.</u> at 495. An unequal disparity between a company's remedial options and the consumer's remedial options constitutes strong evidence that the provision is unconscionable. <u>Id.</u> An arbitration provision which is non-negotiable, difficult for the average consumer to understand, and places the company who drafted the provision in a superior bargaining position supports a finding of unconscionability. <u>Id.</u> at 493.

The company continues to have the upper hand when it forces the consumer to front its own attorney's fees, witness fees, and expert witness costs. <u>Id.</u> at 493. While access to attorneys is not the sole determining factor when analyzing if a contract is unconscionable, it remains one of the relevant factors when determining the overall conscionability of a contract. <u>Id.</u> at 494; <u>Concepcion</u>, 131 S.Ct. at 1752. Small consumer loan cases are typically not financially viable for attorneys due to the complicated legal nature and small damages at issue. <u>Brewer</u>, 364 S.W.3d at 494. Consumers who take loans out from companies such as Defendant usually cannot afford an attorney. <u>Id.</u> In most instances, attorneys are unable to take on these cases except on a pro-bono basis. <u>Id.</u> A consumer does not necessarily have the benefit of counsel when attempting to obtain a remedy on an individual basis because only a limited number of attorneys take these types of cases. <u>Id.</u>

Here, the terms in the arbitration provision are vastly one-sided. Defendant does not waive any remedies or rights in its arbitration provision. Defendant can discard arbitration and litigate at its choice and can choose state court to litigate any issues against the consumer. Conversely, the arbitration provision forces the consumer to submit *all* issue to binding arbitration. (Pet. Ex. 3).

Defendant's arbitration provision makes the consumer responsible for paying its attorneys' fees and costs to litigate any issues under the contract. The present provision is remarkably distinguishable from the provision in Concepcion. Unlike in Concepcion, where AT&T shouldered the costs of arbitration and promised to pay double the consumer's attorneys' fees if the consumer recovered a larger amount than AT&T had offered before arbitration. Brewer, 364 S.W.3d at 493; Concepcion, 131 S.Ct. at 1744, 1752. Here, Defendant will front the arbitration fees, but requires reimbursement of the arbitration fees if an adverse ruling against the consumer is returned. (Pet. Ex. 3). Moreover, in paragraph 5 of Defendant's arbitration provision it clearly states, "[T]hroughout the arbitration, each party shall bear his or her own attorneys' fees and expenses such as witness and expert witness fees." (Pet. Ex. 3). Here, Defendant is neither offering to truly shoulder the cost of arbitration nor paying Ms. Volpe's attorneys' fees.

The arbitration provision carves out a one-sided exception to the "bear his or her own fees" language in the provision in favor of Defendant. Defendant is allowed to recover the cost and fees of litigation, but the consumer is not allowed to recover costs and fees under any circumstances. (Pet. Ex. 3). In Concepcion, AT&T expressly waived its right to collect attorneys' fees when defending the case against the consumer. Concepcion, 131 S.Ct. at 1744; Brewer, 364 S.W.3d at 493. Defendant does not waive its right to recover attorneys' fees for the arbitration as AT&T expressly did in Conception. If Defendant wins a claim against a consumer then it can

8

recoup attorneys' fees, court costs, and collection costs pursuant to the "COLLECTION COSTS" section in the arbitration provision. (Pet. Ex. 3). However, if the consumer wins in arbitration, the contract does not allow for reimbursement of attorneys' fees or witness costs. (Pet. Ex. 3). The consumer could bear more costs and expenses to arbitrate the matter than any recovery he or she may obtain in arbitration.

The terms of Defendant's arbitration provision leaves its consumers at an enormous disadvantage compared to the consumers in Conception. In Concepcion, the arbitration provision provided for an informal thirty-day dispute resolution procedure, the consumer could easily file for arbitration by filling out an online form on AT&T's website if he or she was dissatisfied, and the arbitration would occur in the consumer's home county and could be by telephone, in person or on paper for small claims. Id. at 1744. Here, Defendant provides no informal dispute resolution, the consumer must send written notice via certified mail to make a demand for arbitration, the provision allows the arbitration to potentially be thirty (30) miles away from the consumer's county of residence, and requires the consumer to be at the arbitration in person. (Pet. Ex. 3).

Even Defendant's "opt-out" section in its arbitration provision is grossly one-sided. Defendant has an "opt-out" section in its arbitration provision. (Pet. Ex. 3). It requires the consumer to send written notice to Defendant with the following details about the consumer: (1) name; (2) address; (3) social security number; (4) the date of this Agreement; and (5) a statement that you wish to opt out of the Arbitration Provision. (Pet. Ex. 3). A consumer must complete every specific request and send the written notice within thirty (30) days of the agreement. Defendant's loan terms are typically for fourteen days. (Pet. Ex. 1, 2). As alleged in Ms. Volpe's Petition, Defendant reissues new loans and increases the principal owed instead of allowing the

consumer to pay down the principal, in violation of Missouri law. Petition ¶¶ 3, 7, 8. However, Defendant makes it known that the "opt-out" option is only for that specific arbitration provision. (Pet. Ex. 3). Therefore, a consumer could effectively be issued a new loan agreement before his or her "opt-out" request ever goes into effect, forcing them to go through the entire "opt-out" procedure again. Defendant's "opt-out" section effectively makes it nearly impossible for a consumer to ever "opt-out" of the arbitration provision, which defeats the entire purpose the "opt-out" section is supposed to serve.

> 2. <u>Defendant's arbitration provision is a contract of adhesion and therefore unconscionable.</u>

A contract of adhesion, as opposed to a negotiated contract, is a contract presented in a take-it-or-leave it basis, formed as a product of a gross inequality of bargaining power between parties, generally in a standardized form. <u>Swain</u>, 128 S.W.3d 103, 107 (Mo. Ct. App. E.D. 2003); <u>State ex. rel Vincent v. Schneider</u>, 194 S.W.3d 853, 857 (Mo. 2006). The "stronger party" has more bargaining power than the "weaker party," often because the "weaker party" is unable to look elsewhere for more attractive contracts. <u>Schneider</u>, 128 S.W.3d at 857. In Missouri, the terms of an adhesion contract include those which unexpectedly or unconscionably limit the responsibilities and liabilities of the drafting party. <u>Swain</u>, 128 S.W. 3d at 107. Adhesion contracts are normally presented in the pre-printed form and involve the unequal bargaining power of a large corporation versus an individual. <u>Id.</u> Contract provisions that fail to conform with the reasonable expectations of the parties and that are unexpected and unconscionably unfair are unenforceable. <u>Id.</u>

In this case, the arbitration provision is a contact of adhesion. Defendant is a large corporation and Ms. Volpe is a consumer. Thus, bargaining power is unequal. The arbitration

provision is standardized and Defendant has not presented any evidence that consumers can negotiate the terms of the arbitration provision.

### 3. Defendant's arbitration provision was in fine print and could not easily be read or understood.

An arbitration provision in fine print is a factor when determining if a contract is unconscionable. Manfredi v. Blue Cross and Blue Shield, 340 S.W. 3d 126, 132 (Mo. Ct. App. 2011); Whitney v. Alltel Communications 173 S.W. 3d 300, 308 (Mo. Ct. App. 2005). Fine print suggests that a merchant is trying to withhold information rather than convey it. Only when a party is "capable of reading and understanding a contract" is that party "charged with the knowledge of that which he/she signs." Mason v. Mason, 873 S.W.2d 631, 635 (Mo. Ct. App. 1994).

Defendant's arbitration provision is printed in tiny (8-point or 10-point) font. The arbitration provision is less than single-spaced, contains over 1,200 words, including a sentence with more than 240 words, and has approximately .5" margins. Accordingly, it would appear that Defendant is trying to withhold information rather than convey it. Moreover, Ms. Volpe was not capable of reading and understanding the Arbitration Provision and therefore should not be charged with the knowledge of what the Arbitration Provision purports to define. Accordingly, this Court should find that Defendant's Arbitration Provision is unconscionable.

### 4. Defendant holds an unequal bargaining position over its consumers.

A large corporation holds superior bargaining power over its consumers. Swain, 128 S.W. 3d at 107. Strong evidence of unconscionability occurs when unequal bargaining power coerces the weaker party to agree to the company's arbitration provision. Robinson, 364 S.W.3d 505 n.12 (2012).

Here, Defendant is a large corporation, which made over $7,000,000.00 in six months from January 2015 to June 2015. Defendant renewed Mrs. Volpe's loan at least twenty (20) times, in violation of Missouri law. As a result of the unequal bargaining power, Ms. Volpe was routinely placed in high-pressure situations regarding the renewal of her loan(s) with interest rates exceeding 400%. Ms. Volpe was ultimately forced to sign Loan Agreements with Terms and Conditions that contained, inter alia, an Arbitration Provision due to her inferior bargaining power. Accordingly, this Court should find that Defendant's Arbitration Provision is unconscionable.

### D. Defendant's Waiver of Jury Trial and Arbitration Provision is Unconscionable Under Missouri Law.

If this Court cannot conclude as a matter of law that Defendant's Arbitration Provision is unconscionable, Ms. Volpe asks for a 90-day period to seek discovery to create a factual record to display how Defendant's class waiver functions in the real world.

### IV.  CONCLUSION

For the above stated reasons, Ms. Volpe asks this Court to deny Defendant's Motion to Stay Litigation and Compel Arbitration, and to grant the relief requested in this Memorandum in Opposition.

Dated: August 9, 2015

                              Respectfully submitted,

                              The Mutrux Law Firm, LLC

                              /s/ Tyson Mutrux

                              _____
Gregory Klote #66888
(*accepted for admittance on August 6, 2015*)
Tyson Mutrux ##63117MO
1717 Park Avenue
St. Louis, Missouri 63104
(314) 270-2273 – (p)
(314) 884-4333 – (f)
Greg@MutruxLaw.com
Tyson@MutruxLaw.com
Attorneys for Plaintiff Carolina Volpe,
Individually and on behalf of others
similarly situated

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was served, via the Court's electronic notification system on August 9, 2015, upon all parties of record.

                /s/ Tyson Mutrux
                **Attorneys for Plaintiff Carolina Volpe,**
                **individually and on behalf of others similarly situated.**