UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| CAROLINA VOLPE, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | 4:15 CV 1119 JMB |
| vs. | ) ) | |
| ADVANCE AMERICA, CASH ADVANCE CENTERS OF MISSOURI, INC., d/b/a/ Advance America, Cash Advance Centers, d/b/a Advance America (a Delaware Corporation) | ) ) ) ) ) ) | |
| Defendants. | ) | |

**<u>MEMORANDUM AND ORDER</u>**

Before the Court is Defendant's Motion to Stay Litigation and Compel Individual Arbitration (ECF No. 8).[1] The Court has jurisdiction under 28 U.S.C. § 1332, and all matters are pending before this Court with the consent of the parties under 28 U.S.C. § 636(c). This matter has been fully briefed and is ready for disposition.

<u>Background</u>[2]

Beginning in August of 2009, Carolina Volpe ("Plaintiff") sought and received several small, short-term loans from Advance America, Cash Advance Centers of Missouri, Inc, d/b/a/ Advance America ("Defendant"). As part of the loan process each time, Plaintiff signed nearly identically-worded Consumer Loan Agreements ("Loan Agreements"). The Loan Agreements, in turn, contain details of the loan amounts, various Federal Truth in Lending Disclosures (such

---

[1] This Memorandum and Order will also address Plaintiff's Second Motion for Leave to Substitute Plaintiff's Memorandum In Opposition of Defendant's Motion to Stay Litigation and Compel Individual Arbitration (ECF No. 17), and Defendant's Response thereto, which this Court will construe as a motion based upon the contents of the Response (ECF No. 20).

[2] The factual discussion in this section is only for purposes of the motion under consideration.

1

as Annual Percentage Rate, the Finance Charges, etc.), and required Missouri Disclosures.  (See ECF No. 9-1, 9-2)  The Loan Agreements also reference an obligation to arbitrate in three different places.

First, on the front of the document, above one of the signature lines, the following language appears in bold print:  "**Please note that this Loan Agreement contains a binding arbitration provision….**"  Second, a few inches down the page, above the final signature line on the front page, the following language appears in bold print:  "**You further acknowledge that you have read, understand, and agree to all of the terms on both sides of this Loan Agreement, including the provision on the other side of this Loan Agreement entitled 'Waiver of Jury Trial and Arbitration Provision.'**"  (Id.)

Third, the opposite side of the Loan Agreement contains a full page of Additional Terms and Conditions.  A majority of these Terms and Conditions relate to arbitration.  Those terms require that "all disputes, including any representative Claims against [Defendant] and/or related third parties shall be resolved by binding arbitration only on an individual basis with you."  As relevant to this particular motion, the Terms and Conditions define "dispute" to mean *inter alia* "all claims, disputes, or controversies arising from or relating directly or indirectly to the signing of this Arbitration Provision, *the validity and scope of this Arbitration Provision*, *and any claim or attempt to set aside this Arbitration Provision*."  (Id.) (emphasis supplied).  Plaintiff signed or initialed next to or below all three references to arbitration.  (Id.)

Over the course of their relationship, Plaintiff took out many similar loans from Defendant, and signed several identical Loan Agreements.  Plaintiff alleges that during this time, she was stuck in a cycle of debt whereby she could not pay off old loans without taking out new

2

ones; her loans were structured so as to prevent her from paying down principle; and that she was charged exorbitant interest rates, in violation of Missouri law. (ECF No. 18-1 at *2)

Plaintiff filed suit in St. Louis County on June 15, 2015, alleging that Defendant violated the Missouri Merchandising Practices Act (Mo. Rev. Stat. § 407.010 *et seq.*) and laws regarding Lenders of Unsecured Loans Under $500 (Mo. Rev. Stat. § 408.500 *et seq.*). Plaintiff also sought a Declaratory Judgment under Missouri law that the Arbitration Provision of Plaintiff's Loan Agreements is unconscionable and unenforceable. (See e.g. Petition, ¶¶ 82, 140, 79)

Defendant timely removed this case to federal court on the basis of diversity jurisdiction under 28 U.S.C. § 1332. (ECF No. 1) Defendant then moved for an order staying litigation and compelling Plaintiff to arbitrate these purported violations of law. (ECF No. 8)

Arguments of the Parties, and Summary of Decision

Defendant argues that the plain language of the Arbitration Provision—as quoted above—requires Plaintiff to arbitrate all of the claims that she has filed in state court, including the preliminary question of whether the Arbitration Provision is binding; and that Plaintiff must do so on an individual basis, not as the representative of a putative class of plaintiffs.

On the other hand, Plaintiff argues: (1) that the enforceability of the Arbitration Provision must be decided by this Court, as opposed to by an arbitrator; (2) the Arbitration Provision is unenforceable because it is an unenforceable contract of adhesion; (3) and the Arbitration Provision is unconscionable.

For the reasons stated herein, the Court finds that this issue regarding the validity, scope, and enforceability of the Arbitration Provision must be decided in the first instance by an arbitrator because the parties provided—in the Loan Agreements—for an arbitrator to decide whether the Arbitration Provision is enforceable. Alternatively, even if the question of the

3

enforceability of the Arbitration Provision were properly before this Court, the undersigned would hold that the Arbitration Provision is not unconscionable, and is therefore enforceable under the Federal Arbitration Act ("FAA") and Missouri law.

Discussion

This Agreement is governed by the FAA. 9 U.S.C. §§ 1-16. Under the FAA, an agreement to arbitrate is to be treated as a normal matter of contract. American Exp. Co. v. Italian Colors Restaurant, 133 S. Ct. 2304, 2308-09 (2013). That means that an agreement to arbitrate must be "rigorously enforce[d]" according to its terms. Id.

The terms of this Loan Agreement state explicitly that "all disputes" will be resolved by an arbitrator, and the terms of the Loan Agreement define "dispute" to include "the validity and scope of this Arbitration Provision and any claim or attempt to set aside this Arbitration Provision." Thus, this agreement delegates to the arbitrator the decision over the enforceability of the Arbitration Provision. This Court must "rigorously enforce" this delegation according to its terms. Id.

Furthermore, this dispute is directly controlled by Rent-A-Center, West, Inc. v. Jackson, 561 U.S. 63 (2010). In that case, the plaintiff filed an employment discrimination suit against defendant Rent-A-Center, his former employer. As part of his employment contract, the plaintiff signed a "Mutual Agreement to Arbitrate Claims" which provided for arbitration of all "past, present or future disputes arising out of [plaintiff's] employment," and which provided that "[t]he Arbitrator, and not any federal state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement, including, but not limited to any claim that all or any part this Agreement is void or voidable." Id. at 65-66. The plaintiff in Rent-A-Center argued that the

4

arbitration provision was unconscionable. The defendant argued that this preliminary question was delegated to the arbitrator, while the plaintiff argued that a court has to determine the preliminary question of arbitrability. The Supreme Court agreed with the defendant, holding that under the FAA, where an agreement to arbitrate includes an agreement that the arbitrator will determine the enforceability of the agreement, then the decision regarding enforceability is for the arbitrator. (Id. at 67-74) The Supreme Court labeled this delegation provision a "gateway issue," and held that "unless [the plaintiff] challenged the delegation provision specifically, we must treat it as valid under § 2 [of the FAA], and must enforce it … leaving any challenge to the validity of the Agreement as a whole for the arbitrator." Id. at 72.

The Arbitration Provision in each of Plaintiff's agreements with Defendant explicitly provides that all disputes arising from the contract will be settled in arbitration, and defines "dispute" to include "the validity and scope of this Arbitration Provision and any claim or attempt to set aside this Arbitration Provision." Thus, the Arbitration Provision in this case, like the agreement to arbitrate in Rent-A-Center, expressly delegates the "gateway issue" of arbitrability to an arbitrator. See 561 U.S. at 70. "[T]he FAA operates on this additional arbitration agreement just as it does on any other." Id. Thus, similar to the Supreme Court in Rent-A-Center, this Court concludes that Plaintiff's arguments against enforceability of the Arbitration Provision are for the arbitrator in the first instance, and not properly before this Court.

Furthermore, even prior to Rent-A-Center, the rule in the Eighth Circuit was that federal courts should defer the question of arbitrability to the arbitrator where the court finds "a clear and unmistakable expression of the parties' intent to leave the question of arbitrability to an arbitrator." Fallo v. High-Tech Inst., 559 F.3d 874, 878 (8th Cir. 2009). Here, the Arbitration

Provision clearly states that it is the province of the arbitrator to determine the validity and scope of the Arbitration Provision and any claim or attempt to set it aside.

Alternatively, even if there were no delegation provision in this case, the Court would still find that the Arbitration Provision is enforceable under the FAA and Missouri Law.

Under the FAA and Missouri law, agreements to arbitrate are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Following the United States Supreme Court decision in AT&T Mobility LLC v. Concepcion, 131 S. Ct. 1740 (2011), and the Missouri Supreme Court case applying Missouri law to that decision, Brewer v. Missouri Title Loans, 364, S.W.3d 486 (Mo. 2012), an agreement to arbitrate is enforceable unless, at formation, the agreement was unconscionable.[3] Id. at 492.

In assessing unconscionability at contract formation, a court should look to the purposes of the unconscionability doctrine, which is "to guard against one-sided contracts, oppression and unfair surprise," which may "occur during the bargaining process" or when a later dispute reveals "the objectively unreasonable terms." Brewer, 364 S.W.3d at 492-93.

Plaintiff here argues that the Arbitration Provision is unconscionable because: (1) the terms of the arbitration provision are "grossly one-sided;" (2) it is a contract of adhesion; (3) the arbitration provision was in "fine print and could not easily be read or understood;" and (4) Defendant holds an unequal bargaining position over its consumers. None of Plaintiff's contentions are meritorious.

First, the terms of the arbitration provision are not grossly one-sided. Although Plaintiff argues that there is no mutuality of obligation—only Plaintiff is bound by the Arbitration

---

[3] Of course other grounds not at issue here, such as fraud or duress may also invalidate such an agreement, because these are traditional grounds for the revocation of any contract, within the meaning of section 2 of the FAA.

Provision, and Defendant can choose to litigate—that is not correct. The terms of the provision apply equally to "all claims asserted by [Plaintiff]" and "all claims asserted by [Defendant]." In any event, mutuality of obligation is not necessary in arbitration agreements. See Eaton v. CMH Homes, Inc., 461 S.W.3d 426, 433 (Mo. 2015) ("the lack of mutuality as to the arbitration agreement does not itself invalidate that arbitration agreement").

Second, the provision is not an unconscionable contract of adhesion. As an initial matter, the very fact that the provision is on a pre-printed form, or is part of a contract of adhesion is not sufficient for it to be unconscionable. Robinson v. Title Lenders, Inc., 364 S.W.3d 505, 515 (Mo. 2012) ("a court should not invalidate an arbitration agreement in a consumer contract simply because it is contained in a contract of adhesion or because the parties had unequal bargaining power, as these are hallmarks of modern consumer contracts generally"). Furthermore, the Court finds it relevant that the Arbitration Provision has an "opt-out" procedure whereby Plaintiff could decline to be bound by the Arbitration Provision if she had mailed a notice of her preference to Defendant.[4] Plaintiff could have opted-out of the Arbitration Provision, so the contention that this Arbitration Provision was forced on Plaintiff on a take-it-or-leave-it basis is simply not correct.

Third, the terms of the Loan Agreement relating to arbitration were not hidden in small print. As this Court recited above, there were multiple references, in bold-faced font, to a binding arbitration provision and waiver of class representation rights. The provision even contained a paragraph describing the nature, process, and implications of the arbitration provision.

---

[4] The opt-out process required Plaintiff to notify Defendant in writing, within thirty days of the date of the Agreement. The notice had to include Plaintiff's name, address, social security number, date of the Agreement, and a statement that Plaintiff wished to opt out of the Arbitration Agreement. See ECF No. 9-3.

7

Fourth, the unequal bargaining power of the parties is simply not, in-and-of-itself, a sufficient grounds to find unconscionability. See Robinson 364 S.W.3d at 515 ("a court should not invalidate an arbitration agreement simply … because the parties had unequal bargaining power"); see also Brewer, 364 S.W.3d at 502 ("an unequal balance of power between the parties, alone, does not support a finding of unconscionability"). Additionally, inclusion of the opt-out feature of this Arbitration Provision cedes to Plaintiff a fair measure of control over the Arbitration Provision.

Thus, this Court holds: (1) that under the governing law of Rent-A-Center v. Jackson, the question of arbitrability is for the arbitrator in the first instance; in the alternative, (2) that the underlying arbitration provision is not unconscionable under the FAA and Missouri law; and (3) it is thus enforceable in this matter.

Finally, also pending before the Court is Plaintiff's Motion for Leave to Substitute Plaintiff's Memorandum in Opposition to Defendant's Motion to Stay Litigation and Compel Individual Arbitration [ECF No. 17] and Defendant's response thereto [ECF No. 20]. The Court grants Plaintiff's Motion and has considered the arguments advanced in Plaintiff's substitute memorandum in resolving this matter. Because the arguments advanced in Plaintiff's substitute memorandum do not alter the Court's final decision, the Court denies as moot Defendant's request to file an amended reply.

Accordingly,

IT IS HEREBY **ORDERED** that Plaintiff's Second Motion for Leave to Substitute Plaintiff's Memorandum In Opposition of Defendant's Motion to Stay Litigation and Compel Individual Arbitration (ECF No. 17) is **GRANTED**;

IT IS FURTHER ORDERED that Defendant's Request to File an Amended Reply is **DENIED** as moot;

IT IS FURTHER **ORDERED** that Defendant's Motion to Stay Litigation and Compel Individual Arbitration (ECF No. 8) is **GRANTED**;

IT IS FURTHER **ORDERED** pursuant to 9 U.S.C. § 4, that the parties proceed to arbitration in accordance with the Loan Agreement; and

IT IS FURTHER **ORDERED** that the parties shall jointly submit a notice updating the Court on the status of this case no later than ten (10) days following the completion of arbitration.

         /s/ *John M. Bodenhausen*
    JOHN M. BODENHAUSEN
    UNITED STATES MAGISTRATE JUDGE

Dated this 1st day of September, 2015